145 A.2d 216 (1958)
Edmond B. BRONSON, Plaintiff,
v.
BAGDAD COPPER CORPORATION, a corporation of the State of Delaware, Defendant.
Civ. A. 960.
Court of Chancery of Delaware, New Castle.
October 1, 1958.
Aaron Finger, of Richards, Layton & Finger, Wilmington, and S. F. Peavey, Jr., New York City, for plaintiff.
James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Roger W. Perry of Snell & Wilmer, Phoenix, Ariz., for defendant.
SEITZ, Chancellor.
By his complaint plaintiff seeks an adjudication that he is the equitable owner of certain shares of stock of the defendant corporation which it now purports to hold as treasury stock. Defendant has moved to *217 dismiss the complaint for failure to state a claim and this is the decision thereon.
In early 1927, plaintiff suggested to Arizona Bagdad Copper Company ("Arizona Bagdad") a scheme by which Arizona Bagdad could raise money to develop its unexploited copper properties. This resulted in a proposal submitted by plaintiff to Arizona Bagdad which was later incorporated in an agreement between them dated January 21, 1927. Insofar as pertinent, its terms, which were approved as required by Arizona Bagdad stockholders, were as follows:
1. Plaintiff would cause a new Delaware corporation to be formed with an authorized capital of $4,000,000 represented by 4,000,000 shares of $1 par value stock.
2. The incorporators of the proposed company would authorize its board to borrow a sum not exceeding $15,000,000 and issue bonds therefor.
3. Plaintiff would then endeavor to obtain not less than $500,000 as working capital for the new corporation.
4. Plaintiff would endeavor to procure the purchase by the new corporation (the present defendant) of the entire property and assets of Arizona Bagdad in exchange for the entire authorized capital stock of the new corporation. Upon compliance with such terms, Arizona Bagdad agreed to convey its assets for such shares.
5. The 4,000,000 shares issued as a consideration for the sale of the property and assets of Arizona Bagdad should be issued and disposed of in the following manner and not otherwise:
(a) 1,200,000 shares to be issued to the stockholders of Arizona Bagdad in exchange for a similar number of its shares.
(b) Not less than 500,000 shares to be issued to plaintiff as he paid therefor.
(c) The remainder of the 4,000,000 issued shares were contributed to defendant, Bagdad, "as a capital stock donation" to be used as the board might decide how best to promote the sale of $15,000,000 worth of bonds for the purpose of providing necessary capital to equip and operate the property acquired from Arizona Bagdad.
Thereafter plaintiff entered into an agreement with the newly formed Bagdad Copper Corporation, the present defendant. By this first agreement, dated March 7, 1927, plaintiff was given certain options to buy up to 600,000 shares of defendant's stock (Option A), and upon compliance therewith, he was given a further option (Option B) to purchase certain bonds which, if purchased, carried with them the right to receive 2,200,000 shares of defendant's stock as a "bonus or consideration" for having purchased the bonds. It was provided that if the plaintiff did not exercise the option, the defendant could remove from its escrow depository the so-called bonus stock and use it. The parties disagree as to whether or not this use was to be unrestricted.
It turned out that the sum of money which plaintiff paid for stock ($600,000) was insufficient to finance the initial development contemplated under the terms of the first agreement. Plaintiff's option adversely affected defendant's ability to raise additional capital for preliminary work estimated at $700,000. In consequence, another agreement was executed between plaintiff and defendant on September 5, 1929. I note some of its more important provisions. It contained a provision that if plaintiff obtained purchasers for 200,000 shares at $3.50 per share within a fixed time, "this agreement shall become effective and the corporation (defendant) will thereupon deliver to Bronson (plaintiff) a certificate, or certificates for 500,000 shares of stock of the corporation and thereupon the original agreement shall be cancelled and shall be of no further effect or validity". Defendant argues that the quoted provision is decisive but I do not pass upon it.
It was provided in the agreement that upon compliance with the first option to purchase the 200,000 shares, the plaintiff was given a further option to purchase the remaining *218 1,700,000 donated shares at $5 per share. The stock was to be escrowed. It was provided, inter alia, that if the option with respect to the 1,700,000 shares was not exercised, "* * * then this Agreement and all rights and options in respect to the one million seven hundred thousand (1,700,000) shares of the stock of the Corporation shall cease and determine, and the corporation shall be entitled to the return of the certificates for such stock deposited in escrow".
Plaintiff had 500,000 shares of stock issued to him under the 1929 agreement; being the 200,000 shares purchased and the 300,000 so-called bonus shares. Plaintiff says the 300,000 shares were issued in return for the cancellation of plaintiff's unexercised option under the 1927 agreement. Defendant says the 300,000 had the broader effect of wiping out any rights plaintiff may have had under the first agreement with defendant. I find it unnecessary to consider the point.
It eventuated that the defendant procured subsequent financing from the R. F. C., presumably many years ago. Thus, defendant abandoned the intent to use the bonds or the 1,700,000 donated shares as a means of obtaining additional finances. The 1,700,000 shares were returned to defendant by the escrow agent and according to the complaint the shares were thereby "freed of the 1929 contract but nevertheless subject to the 1927 contracts:"[1]
For many years defendant carried the 1,700,000 shares or the changed number thereof on its balance sheet as stock "held in treasury". Later the designation was changed to "treasury stock". Plaintiff alleges that the first designation indicates a custodian relationship and that the subsequent change cannot prejudice plaintiff. I do not consider this point significant here.
If plaintiff states a claim under any recognizable theory the motion to dismiss must be denied. Plaintiff claims that when the stock involved was originally donated to the defendant corporation it was donated for a specific purpose, namely, to raise money to help finance a particular aspect of the corporation's operation. Since it was not used for that purpose, plaintiff contends that the defendant no longer has an equitable right to it. Conceding this to be so, plaintiff must show that he has some right to it.
Plaintiff says that "the remaining 2,800,000 shares were donated by the plaintiff, under a contract with the plaintiff (emphasis plaintiff's)". As I view it, this is the crux of the case because if plaintiff did not have any personal interest in the donated shares I do not believe the agreements gave rise to any interest which would give him an equitable claim to the shares involved.
Preliminarily, I shall pass over defendant's contention that while labeled a capital donation, the 2,800,000 shares held by defendant were not in fact a capital donation because they were part of the consideration for the over-all agreement. I do this in order to reach the basic issue as to whether plaintiff has standing to sue as the conditional donor of the 2,800,000 shares.
The March 7, 1927 agreement between plaintiff and defendant contains the following recital:
"That its [defendant's] authorized capital stock is four million dollars, represented by 4,000,000 shares of the par value of $1.00 each, which will be presently issued full paid and nonassessable in payment for property and other considerations. Of the said total authorized issue, 2,800,000 shares will be presently contributed by the vendors of said property to the party of the first part *219 [defendant] as a capital stock donation, and are owned and held by first party for the uses and purposes set out in this agreement; and the balance of 1,200,000 shares will be presently distributed to the vendors of said property and will be presently outstanding."
It is undisputed that 1,200,000 shares were delivered to the Arizona Bagdad stockholders in a share for share exchange of their stock (Paragraph Fifth of January 21, 1927 agreement). Consequently, the above quotation makes it clear that the Arizona Bagdad stockholders were the vendors of the property purchased by defendant. Obviously then, plaintiff, individually, was not the vendor. Since the vendors, who are clearly identified as all the stockholders of Arizona Bagdad, donated the 2,800,000 shares to defendant, it is not a reasonable inference to conclude that plaintiff was a donor having a standing greater than any other stockholder. Thus, he individually, cannot claim the benefit of the fact that the 1,700,000 donated shares were not used for the purpose designated. If such a claim exists it belongs in reality to the stockholders of defendant since they exchanged Arizona Bagdad's stock for defendant's stock on a share for share basis.
How then can plaintiff file a personal claim against defendant for the donated shares?
Obviously, plaintiff must argue that the court and defendant have no concern beyond the fact that the defendant made its formal agreement with plaintiff rather than with Arizona Bagdad or its stockholders. The form of the agreement cannot and does not obscure the substance of the agreement and the rights of those involved both as signatories and as beneficiaries. Nor is there any suggestion that the stockholders transferred their interests in the donated stock to plaintiff. He was a mere conduit to pass title.
I conclude that the reasonable inferences from the complaint and exhibits warrant and require the conclusion that plaintiff has failed to show that he has, as against defendant, the right to the 241,042.4 shares. He has thus failed to state a claim entitling him to relief.
Defendant's motion to dismiss will therefore be granted. I need not consider other arguments presented.
Present order on notice.
NOTES
[1] In 1935 the par value was changed from $1 to $5 per share. As a result the 1,700,000 shares became 340,000 shares. Some of this stock has been transferred by the defendant. Plaintiff makes no claim thereto. The defendant now holds and plaintiff claims only 241,042.4 shares.