EDMOND B. BRONSON,
Plaintiff,

*vs.*

BAGDAD COPPER CORPORATION,
a corporation of the State of Delaware,
Defendant.

*New Castle—December 16, 1958.*

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, and *S. F Peavey, Jr.,* New York City, for plaintiff.

*James M. Tunnell, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington and *Roger W. Perry,* of Snell & Wilmer, Phoenix, Ariz., for defendant.

SEITZ, Chancellor: This court filed an opinion on October 1, 1958, granting defendant's motion to dismiss plaintiff's one count complaint, *Bronson v. Bagdad Copper Corp., ante p.* 485, 145 *A.2d* 216. The plaintiff was then granted leave to file an amended complaint adding a second count. It is agreed that the prior opinion disposes of the first count. Defendant has also moved to dismiss the second count for failure to state a claim and this is the decision thereon.

To avoid restating the facts in full I shall assume that the reader has read the prior opinion.

Under the first count plaintiff asked to be declared the equitable owner of certain shares of stock of the defendant corporation which it purports to hold as treasury stock. In its prior opinion, which in effect dealt with count one, the court held that plaintiff could not assert an individual right to all of the shares remaining in defendant's treasury because the instrument by which the shares were "donated" by Arizona Bagdad stockholders to the defendant corporation made it clear that plaintiff alone was not the owner of all such shares.

In count two plaintiff realleges the facts pertinent to the first count. He then alleges that at the time of his proposal of March 7, 1927, to defendant and at the time of the execution and delivery of the agreement between plaintiff and defendant dated March 27, 1927, plaintiff held and owned in his individual right 7.587% of the outstanding stock of Arizona Bagdad. Plaintiff's claim under this count is for 7.587% of the 241,042.4 treasury shares remaining. By his second count plaintiff thus seeks to recover that portion of the stock remaining which is equal to the percentage which his personal stock ownership in Arizona Bagdad bore to the total number of shares outstanding at the donation date.

Defendant asserts the same arguments which were advanced in connection with its motion to dismiss the original complaint, and adds additional grounds.

The first pertinent agreement of January 21, 1927, was between plaintiff and Arizona Bagdad. It provided that the 4,000,000 shares to be received from the then unincorporated defendant for Arizona Bagdad's assets should be issued and disposed of "in the following manner and not otherwise". The agreement then provided for the issuance of 1,200,000 shares to the stockholders of Arizona Bagdad share for share; the issuance of not less than 500,000 to plaintiff as he paid for them; the contribution of the remainder to defendant to be

used as the board might decide how best to promote the sale of bonds to provide capital.

Thereafter, under date of March 7, 1927, plaintiff entered into an agreement with the subsequently formed defendant. Its terms are narrated in the previous opinion. They gave plaintiff certain options including an option to purchase bonds to be issued by defendant.

By an agreement dated September 5, 1929, plaintiff and defendant altered the terms of their 1927 agreement. This was done because the bond-purchase option granted plaintiff under the 1927 agreement prevented the corporation from raising sufficient capital. Thus, the 1929 agreement admittedly altered the prior agreement. The effect of the 1929 agreement on the 1927 agreement is the issue in this case.

The March 7, 1927 agreement, while formally between plaintiff and defendant, was of course clearly for the benefit of all the stockholders of Arizona Bagdad, including plaintiff. It may reasonably be inferred that the plaintiff contracted with the authority of all the Arizona Bagdad stockholders. Whether plaintiff had such general authority when he came to sign the September 5, 1929, agreement I need not decide. He clearly had authority to contract for himself. Consequently, when he executed the agreement of September 5, 1929, he had the power to contract to dispose of any interest in the donated shares which he may have reserved to himself by prior agreement.

I therefore look to the 1929 agreement to see in what respect, if any, plaintiff purported to contract with respect to his assumed individual rights in the donated shares.

Preliminarily, I note that plaintiff's complaint (par. 8) makes it clear that plaintiff recognizes that his rights under both counts are found in the 1927 agreements. Although the defendant was a party only to the March 7, 1927 agreement, I shall assume that both contracts are pertinent.

Paragraph II of the 1929 agreement provides as follows:

"Conditioned upon Bronson's securing and delivering to the Corporation within thirty (30) days from the date of this agreement a firm underwriting by responsible persons to take up and pay for the 200,000 shares of stock of the Corporation at $3.50 per share within ninety (90) days after the delivery of such firm understanding to the corporation, this agreement shall become effective and the corporation will thereupon deliver to Bronson a certificate, or certificates, for 500,000 shares of stock of the corporation and thereupon the original agreement [of 1927 between plaintiff and defendant] shall be cancelled and shall be of no further effect or validity."

Paragraph X thereof reads in part as follows:

"In the event that this Agreement shall not become effective as provided in Paragraph II, hereof within thirty (30) days from the date of this Agreement, or such later date as may be agreed upon by the Corporation and Bronson, then this Agreement shall thereupon become null and void and the Original Agreement shall remain in full force and effect."

It is admitted that plaintiff complied with the condition quoted in Paragraph II and received 500,000 shares of stock therefor. Despite the all inclusive language to the effect that upon compliance with the condition the Original Agreement should be cancelled and of no further effect or validity, the plaintiff argues that the language must be construed to apply only to the cancellation of the unexercised bond-purchase option which plaintiff gave up by executing the 1929 agreement and meeting the condition of Paragraph II thereof. Plaintiff says an excerpt from the minutes of the stockholders' meeting at which the 1929 agreement was ratified shows that the 1929 agreement was intended to apply only to the bond-purchasing option provision. He relies upon the following excerpt:

"The meeting * * * also discussed the cancellation of the provisions for the sale of the bonds of the company, as provided

in the aforesaid original agreement of March 7, 1927, in connection with which the Chairman stated that, as a consideration for the cancellation of the privilege to purchase these bonds, the company had given such purchasers 300,000 shares of the capital stock of the corporation. * * *"

Plaintiff also notes that the Federal Court in *Bronson v. Commissioner, 2 Cir., 183 F.2d 529,* referred to the provision in similar terms.

Despite the clear language of the 1929 agreement, let us assume that the explanation is relevant. I am inclined to agree that one purpose of the agreement was as plaintiff suggests. This does not mean that the effect was so limited. After all, the 1929 agreement not only provided a means of wiping out the bond-purchase option, it also provided the mechanics for raising additional capital by giving plaintiff additional options. Consequently, the explanation given the stockholders does not purport to be a detailed statement of all consequences of the agreement.

In any event, there is a more decisive answer to plaintiff's contention that the 1929 agreement did not purport to apply to all the donated shares.

The keystone of plaintiff's entire case is the contention that the stock in dispute was donated for a particular purpose and since it was not used for that purpose it should be returned to its conditional donors. Plaintiff relies upon the 1927 contracts to support his contention. The 1927 contracts (between plaintiff and Arizona Bagdad, and between plaintiff and defendant) both make it clear, as plaintiff indicates, that the donated shares (except for those to be purchased at the outset by plaintiff) were to be used solely to assist in the sale of up to $15,000,000 worth of the defendant's bonds. Since they were never used for that purpose plaintiff argues that those remaining should be returned to the donors.

Plaintiff's argument overlooks one vital fact. He himself entered into the 1929 agreement with defendant and that agreement ran directly contrary to the provisions of the earlier agreements limiting the purpose for which the donated stock could be used. Under the 1929 agreement no portion of the remaining donated shares was to be used for the purpose of selling the defendant's bonds. Indeed, plaintiff was given the right to purchase 200,000 shares of the donated stock and, if purchased, he was to receive a bonus of 300,000 shares of the donated stock. In addition, he was given an option to purchase all of the remaining donated shares.

Obviously, the 1929 contract to which plaintiff was a party completely diverted the donated shares from their original purpose—the purpose which is at the bottom of plaintiff's claim. Under these circumstances I do not see how there can be any merit to plaintiff's contention that the only purpose of the 1929 agreement was to release plaintiff's bond-purchase option. It did that and more, and it did it in a manner which not only changed the original purpose of the donation but resulted in plaintiff's obtaining a substantial number of such shares in a manner not contemplated by those making the original donation.

Plaintiff emphasizes the recital in the 1929 agreement that "the parties hereto desire to modify and supplement said Original Agreement of March 7, 1927, as herein set forth."

Plaintiff seems to suggest that because the words "modify and supplement" rather than "abrogate" are used, the 1929 agreement was intended only to have the limited operation suggested. I cannot agree. The 1929 agreement by its terms did not automatically abrogate the 1927 agreement. This was necessarily so because it was not so intended. Termination depended upon compliance with a term of the later agreement.

Plaintiff next emphasizes the provision in the 1929 agreement to the effect that the donated capital stock is "owned and held by the first party [defendant] for the uses and purposes set out in this agree-

ment subject only to the said Original Agreement dated March 7, 1927". Once again, I think this language is perfectly consistent with the fact that under Paragraph II of the agreement, the 1927 agreement was not automatically cancelled but became inoperative after and only after plaintiff met the condition contained in the paragraph.

Plaintiff argues that the 1929 agreement cannot abrogate the plaintiff's claim of equitable ownership in the remaining donated shares because there was no consideration therefor. I think the 1929 agreement does provide consideration for the termination of plaintiff's equitable interest in the donated shares. First of all, the agreement itself has not apportioned the consideration. But if, as plaintiff argues, the giving of the 300,000 shares was consideration only for the cancellation of the bond-purchase option, nevertheless, the second option in the 1929 agreement giving plaintiff the right to purchase the remaining 1,700,000 shares of donated stock would seem to be sufficient consideration. I so conclude.

Speaking solely of plaintiff's possible interest in the donated shares remaining, I conclude that by meeting the condition of Paragraph II of the 1929 agreement he explicitly contracted away any rights he might otherwise have possessed under the 1927 agreements with respect to such shares. It follows that plaintiff's individual claim contained in count two is also without merit.

Defendant's motion to dismiss the second count will be granted.

Present order on notice.